## JOHN RUGELY *v.* JAMES GOODLOE & CO.

Rule of damages where defendant is in good faith. C. C. 1928, s. 1.

If the contract on which the action is brought, is annexed to or made a part of the petition, an objection to the introduction of it in evidence, on the ground of variance, cannot be sustained.

In a contract for the performance of work, the omission to state the time at which it is to be completed, is an incident which the court will supply according to equity, usage and law; and testimony may be received of those facts and circumstances which tend to show the time for its completion, which the parties may be presumed to have had in view.

APPEAL from the Second District Court of New Orleans. The case was tried by a jury before Lea, J. Elmore and King, for plaintiff. G. B. Duncan, for defendants. By the court:

PRESTON, J. The plaintiff is a sugar planter in Matagorda county, in the State of Texas; the defendants, manufacturers of sugar mills and engines, in Cincinnati, which they also put up on southern plantations.

On the 14th of February, 1850, they entered into an agreement that the defendants should build and put into operation, on the plantation of the plaintiff, a sugar mill and engine, particularly described in the agreement, with all the necessary pumps and pipes to make the work complete. They agreed to have the mill and engine delivered in New Orleans on or before the 1st day of June, 1850. On the other hand, the plaintiff agreed to have it transported to his plantation within sixty days from the time it was landed in New Orleans, to supply the necessary brick work and timber for putting up the mill and engine, and to furnish a suitable number of hands to assist in putting them up; and the defendants agreed to put them up, in complete running order, on the plantation of the plaintiff. In consideration of the premises, the plaintiff agreed to pay, and has paid, the defendants four thousand one hundred dollars.

The plaintiff alleges, that the defendants failed to comply with their contract; that he thereby lost one-half of his sugar crop of 1850, equal to an hundred hogsheads of sugar, worth upwards of five thousand dollars, and claims damages to that amount.

The defendants admit the payment of the price of the mill and engine; deny that they were bound to execute the work at any particular time; allege that they pushed the work with all possible diligence, and complied with their contract without any unavoidable delay, and that the plaintiff lost nothing by their fault or negligence; but, if he lost any part of his crop, it was by his own delays in not providing for the seasonable delivery of the mill on his plantation; in not being prepared for putting it up when they were ready to perform their part of the contract, and in not having a sufficient quantity of seasoned wood to manufacture his sugar when the mill and engine were put into operation.

The case was tried by a jury, who rendered a verdict for three thousand dollars damages in favor of the plaintiff, and the defendants have appealed.

The plaintiff alleged, that the defendants were bound by their contract to complete the mill and engine by the 20th of October, 1850. He offered in evidence the contract, which contained no such clause. The defendants opposed its introduction in evidence, because it was not the contract upon which the plaintiff declared or rather varied in terms from the allegations in his petition. The court submitted it in evidence, and they excepted.

The plaintiff had annexed his contract with the defendants to his petition, as part thereof. The defendants were thereby perfectly apprised of the contract upon which they were sued, and suffered no surprise by the offer of it in evidence. The allegations in the plaintiff's petition amount substantially to his interpretation of the contract, upon the correctness of which interpretation it was for the court and jury to decide. The bill of exceptions to the introduction of the contract in evidence is not, therefore, tenable.

The plaintiff offered verbal evidence to show, that planters commence taking off the sugar crops, in the part of Texas where he resides, from the 10th to the 20th of October; that it is dangerous, from the probability of frost, to delay it longer; that one of the defendants had been in Texas about the time the negotiation for the mill and engine was commenced, became acquainted with the

extent of the plaintiff's crop, the necessity of that early commencement to secure it, and, of course, to have the mill and engine ready for that purpose; and that the contract for the mill and engine was made for taking off the ensuing crop of the plaintiff, and with a full knowledge and view of these necessities. Testimony on these subjects was opposed, as tending not only to vary but add to the contract of the parties, and as being forbidden by article 2256 of the Civil Code.

No precise time was specified in the written contract, at which the mill and engine should be put up and in operation; and yet it was to be put up and in operation some time. Now, equity, usage and law, supply in contracts such incidents as the parties may reasonably be supposed to have been silent upon, from a knowledge that they would be supplied from one of these sources. Civil Code, art. 1959.

We cannot doubt, from a perusal of the contract itself, from the fact that the machinery was to be delivered in New Orleans by the 1st of June, and to be transported to the plaintiff's plantation within sixty days afterwards, that the mill and engine was intended by both parties to take off the plaintiff's ensuing crop of sugar. All this testimony offered and objected to, was proper, therefore, to show at what time it was necessary to have the mill and engine put into operation in order to take off that crop, that is, to accomplish the object for which the plaintiff engaged and agreed to pay for them, and to show that the time within which they were to be completed, was perfectly within the knowledge and understanding of both parties, though not expressed in the agreement; and the testimony fully satisfies us, that it was the understanding of the parties, and the duty of the defendants in pursuance thereof, that the mill and engine should be put up and in operation at least by the 20th of October, 1850, to enable the plaintiff, like all other planters in that vicinity, to commence taking off his crop by that day, because the commencement could not be protracted beyond that time, without danger of losing the crop by frosts.

The voluminous testimony furnished by the plaintiff, shows that he fully complied with his contract; that he transported the machinery to his plantation so as to afford ample time to have enabled the defendants to put it up before the proper season for taking off the crop; that he had every thing necessary for the defendants, prepared by the 1st of August, 1850, when their workmen arrived on the plantation, and was ready and anxious to afford them every facility to comply with their contract; urged it all in his power, and warned their agent of the dangers of delay, and that he would look to the defendants for indemnification, if he lost his crop in consequence of their failure to have the mill and engine ready for the grinding season. The foreman and workmen arrived in time to have completed every thing in due season, but soon afterwards left the work in an incomplete state, and did not return until the 1st of November. The excuse was, that it was necessary to go to Galveston to make some changes in a pipe. The plaintiff proves that it was not necessary to go to Galveston for that purpose; that if it was, he offered to send and have the change made, which could have been done, and that a very temporary absence of the foreman, at all events, would have been sufficient for the purpose. That instead of speedily going to Galveston, making the alterations and returning, the foreman went to and remained at other places.

In consequence of the delay, the mill and engine were *not put into operation* until the 11th of November, 1850. A killing frost came on the night of the 4th or 5th of December, before the plaintiff had been able to take off half of his crop, and destroyed nearly one-half of it. It was fully proved, that if the mill

RUGELY<br>v.<br>GOODLOE.

and engine had been completed by the 20th of October, the plaintiff would have saved his entire crop.

The effort of the defendants, to show that the plaintiff's loss was caused by the want of a sufficient quantity of seasoned wood to take off his crop, has entirely failed. Rarely has a case been so clearly made out, that the damages were caused by the defendants.

The loss to the plaintiff, is clearly proved to have been caused by the faults and negligence of the defendants in failing to comply with their contract, and they are bound to indemnify the plaintiff.

The jury did not, as urged by their counsel, charge the defendants with the value, in New Orleans, of the sugar lost, which would have exceeded five thousand dollars, but with only three thousand dollars, the probable value on the plantation, of the lost sugar, after deducting the expenses of manufacturing it.

The agreement of the parties was violated passively, no doubt, and without bad faith, but by sheer negligence on behalf of the defendants. What, then, is the rule of damages? Those which may reasonably be supposed to have entered into the contemplation of the parties at the time of contract. Code, art. 1928, No. 1. The making of the crop, and the means of making it, were the very things contemplated by the parties in making the contract; the loss of the crop, the thing which they intended to guard against, and that loss, was the damage reasonably entering into their contemplation if the contract was broken.

It becomes unnecessary, therefore, closely to scrutinize the charge of the court to the jury, though, at first view, we cannot say it was erroneous.

The judgment of the district court is therefore affirmed, with costs.